IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIS BAIRD, # K-81582, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-979-GPM |
| ) | |
| OFFICER KNOP, LIEUTENANT OCHS, ) | |
| DANA DARNOLD, JOHN DOE OFFICER, ) | |
| OFFICER WHEELER, OFFICER GEIER, ) | |
| OFFICER AUSBROOK, NURSE KIMMEL, ) | |
| COUNSELOR RAY, ) | |
| and COUNSELOR DOWNEN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a 25-year sentence for home invasion and a three-year sentence for aggravated criminal sexual abuse. All of his claims arose in November 2012, when he was subjected to excessive force, placed in an inadequately heated suicide-watch cell, and suffered other indignities.

As background for his claims, Plaintiff explains that he filed a grievance on November 7, 2012, against Defendant Officer Knop for falsely stating that Plaintiff had been given a shower (Doc. 1, p. 12). The following day, Defendants Knop and Ray (counselor) confronted Plaintiff over the grievance. Spewing profanity, Defendant Ray told Plaintiff he would not answer the grievance. Plaintiff filed two new grievances against these Defendants. This cycle continued when Defendant Knop verbally harassed Plaintiff on November 14, 2012, telling him he would "win" the grievances; Plaintiff filed another grievance. All these grievances went to Defendant

Ray, who did not respond, and destroyed the grievances (Doc. 1, pp. 12-13, 39).

On November 21, 2012, Defendant Knop again falsely documented that Plaintiff had been given a shower. As a result, the officer on the following shift would not allow Plaintiff to shower when other inmates were permitted to have theirs (Doc. 1, p. 13). Plaintiff complained to another officer, which only resulted in more verbal abuse directed toward him. Furthermore, Plaintiff was singled out for a pat-down search, during which Officer Daniel (who is not a Defendant) hit or touched Plaintiff's genitals twice. None of these other officers are included among the Defendants, but Plaintiff states that these incidents were a direct result of Defendant Knop's harassment and lies about the showers. Plaintiff requested to speak with a crisis team member, but was ignored (Doc. 1, p. 14). He renewed this request when Defendant Knop came back on shift the morning of November 22, explaining to Defendant Knop that he needed a crisis team member because of Defendant Knop's lying and harassment.

Plaintiff's statement of claim begins at this juncture. Defendant Knop ordered Plaintiff to cuff up, and applied the handcuffs so tightly that Plaintiff cried out in pain (Doc. 1, p. 16). Plaintiff asserts that this abuse was in retaliation for Plaintiff's grievances against Defendant Knop. He then forced Plaintiff's wrists (cuffed behind his back) up above Plaintiff's head, causing extreme pain and forcing Plaintiff to walk in a bent-over position (Doc. 1, p. 17). He locked Plaintiff in the shower area, and refused to loosen the cuffs after Plaintiff complained that they were painfully tight and his hand was numb. Defendant Knop called in Defendant Ochs, who took Plaintiff to his office (Doc. 1, p. 19).

Under Defendant Ochs' questioning, Plaintiff explained that he had requested to speak with a crisis team member after the offensive pat-down search, and that Defendant Knop had purposely injured him with the handcuffs. He asked Defendant Ochs to loosen the cuffs, but he

did not do so for several minutes, causing Plaintiff continued pain (Doc. 1, pp. 19-20). Defendant Ochs threatened Plaintiff with three more years in prison if he filed a false report over the pat-down. He then grabbed and twisted Plaintiff's right wrist and hand, causing Plaintiff to bend over the desk in pain. Defendant Ochs next squeezed Plaintiff's right arm and yanked him upright, asking him if he still wanted to file a complaint, as Defendants Knop and John Doe looked on through the window without intervening to stop this abuse (Doc. 1, pp. 20-21, 29). He threatened Plaintiff with a ticket for insolence when Plaintiff complained about this treatment.

Defendant Ochs escorted Plaintiff to the health care unit, where Plaintiff told Defendant Nurse Darnold that he had been assaulted by three officers (Daniel, Knop, and Ochs) in the last 24 hours (Doc. 1, p. 23). Plaintiff denied being suicidal or homicidal, but asked to speak to a crisis team member. Defendant Darnold informed Plaintiff she was placing him on a 30-minute suicide watch. In spite of Plaintiff's protests that he was not a danger to himself, he was taken to segregation, where all his clothing and personal items were taken away. He was then kept for four days over the Thanksgiving holiday weekend in a constantly-lit, freezing cold cell with only a smock to cover himself, a thin, dirty plastic mattress, and no sheets or blankets. He was unable to keep warm, shivered uncontrollably, his fingers and toes turned blue, and he suffered skin outbreaks from the dirty mattress (Doc. 1, pp. 25, 29). He was humiliated because he was in view of other prisoners and staff in his nearly naked condition. Plaintiff suffered, and continues to suffer, emotional distress as a result of this treatment.

Plaintiff asserts that Defendant Darnold's action of placing him in the suicide-watch cell must have been in retaliation for grievances he had previously filed against her (and for his new complaint against the three officers), because his medical records did not establish he was suicidal (Doc. 1, pp. 24-25). Further, she violated his Eighth Amendment rights by imposing the

suicide watch with no medical justification, and with deliberate indifference to the stigma, physical and mental harm he suffered there (Doc. 1, pp. 26, 28). She also deprived him of a liberty interest without due process by not giving him a hearing before that confinement (Doc. 1, pp. 26-27).

When Defendant Darnold sent Plaintiff to the suicide-watch cell, he was escorted by Defendants Wheeler and Geier (Doc. 1, p. 30). They removed Plaintiff's handcuffs (which he had worn for an hour), revealing a cut on his left wrist, and bruises on his right wrist and arm. Plaintiff asked Defendant Wheeler to call for medical care for these injuries, but Defendant Wheeler said there was nothing he could do (Doc. 1, p. 31). He also endangered Plaintiff's health by forcing Plaintiff to stand barefoot on the dirty shower floor, as well as the dirty cell and housing unit floor. Defendants Wheeler and Geier had taken all Plaintiff's clothes, then made him walk naked to the suicide cell in front of dozens of inmates. Plaintiff remained naked for 15-20 minutes in view of many inmates before apparently getting a smock (Doc. 1, p. 32).

After about three hours in the cold cell, Plaintiff asked Defendant Wheeler to move him or provide some heat, but Defendant Wheeler said there was nothing he could do. Plaintiff continued to appeal to Defendants Wheeler, Geier, and Ausbrook (the controlling officer) for relief from the cold, to no avail (Doc. 1, pp. 33-35). During the time Plaintiff was held in the unheated suicide cell, the outside high temperatures ranged from 23 to 28 degrees. He asked Defendant Nurse Kimmel for medical treatment for his painfully cold extremities, but all she offered him was advice to curl up in the fetal position (Doc. 1, p. 37-38). Plaintiff filed grievances with Defendant Counselor Downen, but got no response (Doc. 1, pp. 34, 39-40).

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief (Doc. 1, p. 41). He has also filed three motions for a temporary restraining order ("TRO") or preliminary

injunction. In the first motion (Doc. 2), he requests an order for the prison to provide him with mental health counseling from a non-prison-affiliated provider, because he fears further retaliation if he discusses the traumatic events herein with any prison staff member. The second motion (Doc. 3) seeks an order preventing Defendant Darnold from treating any future medical needs he may have, due to her retaliatory actions alleged herein. The third motion (Doc. 4) requests the Court to schedule an emergency hearing on the first two requests, because Plaintiff continues to suffer mental anguish and fear that he may again be subjected to similar assault and suicide-cell confinement.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal claims that shall receive further review:

**Count 1:** Eighth Amendment claims against Defendants Knop and Ochs for excessive force, and against Defendants Knop and John Doe for failure to intervene as they witnessed Defendant Ochs' use of force against Plaintiff;

**Count 2:** Retaliation claim against Defendant Knop, for inflicting pain on Plaintiff because Plaintiff had filed grievances against him;

**Count 3:** Retaliation claim against Defendant Darnold, for placing Plaintiff in the suicide watch cell after he filed grievances against her and complained about the incidents in Count 1;

**Count 4:** Eighth Amendment claims against Defendant Darnold for subjecting Plaintiff to unconstitutional conditions of confinement in the suicide cell (extreme cold with inadequate means to keep warm), and for placing him there without medical justification;

**Count 5:** Eighth Amendment claims against Defendants Wheeler, Geier, and Ausbrook for failing to remedy or provide Plaintiff with protection from the extremely cold conditions in the suicide cell.

However, Plaintiff's remaining allegations fail to state a claim upon which relief may be granted. Therefore, the following claims shall be dismissed:

**Count 6:** Due process claim against Defendant Darnold for placing Plaintiff in the suicide-watch cell without a hearing;

**Count 7:** Claims against Defendants Wheeler and Geier for deliberate indifference to Plaintiff's medical needs regarding his injuries from the handcuff incidents, and against Defendant Kimmel for denying medical treatment when Plaintiff complained of the cold;

**Count 8:** Claims against Defendants Wheeler and Geier for forcing Plaintiff to walk and stand naked in front of other inmates and prison staff members;

**Count 9:** Claims against Defendants Ray and Downen for failure to properly handle or respond to Plaintiff's grievances.

**Dismissal of Count 6**

The temporary placement of an inmate in a suicide-watch cell is a form of administrative segregation. Illinois statutes and correctional regulations do not place limitations on the discretion of prison officials to put inmates in administrative segregation, including investigative or temporary lockdown or confinement and involuntary protective custody; accordingly, there is no liberty interest implicated by an inmate's placement in these forms of segregation. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995); *Pardo v. Hosier*, 946 F.2d 1278, 1281-84 (7th Cir. 1991); *Kellas v. Lane*, 923 F.2d 492, 494-95 (7th Cir. 1991); *see generally Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983). Because an inmate does not possess a liberty interest in avoiding these types of administrative confinement, no "process" is required before such a cell assignment is made.

Plaintiff did not have a right to a hearing before Defendant Darnold made the decision to temporarily put him in the suicide-watch cell, thus he cannot maintain a constitutional claim for denial of due process. As noted above, Plaintiff has other claims relating to his suicide cell placement that survive § 1915A review. However, the due process claim in Count 6 shall be

dismissed with prejudice.

**<u>Dismissal of Count 7</u>**

This claim encompasses Plaintiff's allegations that Defendants Wheeler and Geier did not allow Plaintiff to get medical care for the cut on his wrist and bruises, and that they put him at risk by making him stand and walk barefoot on dirty floors. Also included is the claim against Nurse Kimmel for denying him medical treatment for his cold fingers and toes while he was in the suicide-watch cell.

Deliberate indifference to serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). In

addition, a condition that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention is also considered a "serious" medical need. *Id.*

In the case of Plaintiff's injuries from the handcuff incidents, his description does not indicate that he suffered from an "objectively serious" condition that needed immediate treatment. He suffered two bruises on his arm, and a "small cut" on his wrist (Doc. 1, p. 30). Plaintiff himself states that he did not suffer any additional pain as a result of not getting medical care when he requested it, but that aspirin might have helped (Doc. 1, p. 31). He does not say that he asked for treatment for his cut or bruises at a later time. Taken together, these allegations do not show that Plaintiff had a serious medical need, nor that Defendants Wheeler and Geier were deliberately indifferent to a substantial risk of serious harm to Plaintiff if he were not treated.

Similarly, Plaintiff's description of being made to stand barefoot on a dirty shower floor for a short time, and then walking barefoot to the suicide-watch cell, does not indicate that he was exposed to an objectively serious risk to his health by Defendants Wheeler and Geier. No constitutional right is implicated here.

Finally, Plaintiff faults Nurse Kimmel for her inadequate response to his request for medical treatment for his painfully cold hands and feet during the four days he spent in the suicide-watch cell. She came to the unit to pass out medications, and Plaintiff showed her his blue fingernails and asked for her help. She advised him to "ball up in the fetal position" to help keep warm (Doc. 1, p. 37). Plaintiff protested that he had already been doing that for hours, and was still cold. She offered no other medical treatment for the effects of the cold.

Plaintiff acknowledges that Defendant Kimmel was not responsible for the conditions of the cell. He does not suggest what type of medical treatment he expected her to provide, that

would have relieved his suffering caused by the cold temperature. As Plaintiff notes in his other claims, what he lacked was adequate heat, or clothing/bedding to protect him from the cold. His problem was not one that could be solved by "medical treatment" of the kind a nurse might administer, and in fact her advice appears to have been appropriate for the situation. Plaintiff's claim against Defendant Kimmel boils down to an attempt to hold her liable for failing to rescue him from the allegedly unconstitutional conditions that were the responsibility of other Defendants. Her actions do not rise to the level of deliberate indifference to a serious medical condition.

In summary, the claims in Count 7 shall be dismissed with prejudice.

**Dismissal of Count 8**

Plaintiff claims that he was mentally traumatized and humiliated when Defendants Wheeler and Geier took all his clothes in the shower area, then made him walk from there to the suicide-watch cell in front of "dozens" of other inmates and prison staff. He apparently remained in that cell without clothes or a cover-up smock for a short time, also within view of fellow inmates and staff. While this experience was no doubt unpleasant, no constitutional violation occurred.

Plaintiff was subjected to a certain amount of embarrassment as a result of having his body exposed. However, prisoners do not have an expectation of privacy in their cells, either to be free from searches or from observation by prison staff. *See Hudson v. Palmer*, 468 U.S. 517, 525-30 (1984); *see also Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995) ("[P]rivacy is the thing most surely extinguished by a judgment committing someone to prison"). The Seventh Circuit has held that female guards can monitor male inmates who are in the shower or on the toilet. "[M]onitoring of naked prisoners is not only permissible … but also sometimes

mandatory. Inter-prisoner violence is endemic, so constant vigilance without regard to the state of the prisoners' dress is essential. Vigilance over showers, vigilance over cells – vigilance everywhere, which means that guards gaze upon naked inmates." *Johnson*, 69 F.3d at 146. Although he was also exposed to the view of other inmates, Plaintiff does not allege that the deprivation of clothing was done either to harass him or with the intent to humiliate him or cause him psychological pain. *See Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). When a prisoner is placed on suicide watch, it is customary to remove from the cell clothing and other items that the prisoner might use to harm himself. Obviously, the purpose of keeping a prisoner on 30-minute suicide watch is to monitor him closely. The complaint does not indicate that Plaintiff was treated any differently than any other prisoner held under this type of surveillance.

These allegations do not state a constitutional claim upon which relief may be granted. Count 8 shall also be dismissed with prejudice.

**Dismissal of Count 9**

Plaintiff complains that Defendant Ray destroyed and/or failed to respond to several grievances he filed against Defendants Knop, Ray, and others, and that Defendant Downen never responded to his later grievances filed over the cell conditions. However, the mishandling or failure to respond to grievances does not implicate any constitutional right.

Plaintiff's efforts to exhaust his administrative remedies by using the prison grievance process may be relevant in the event that a Defendant raises a challenge to Plaintiff's right to maintain a § 1983 suit over the substantive matters raised in the grievances. Nonetheless, a Defendant's action or inaction in handling Plaintiff's grievances does not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th

Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Therefore, even if Defendants Ray or Downen purposely ignored Plaintiff's grievances, or violated the prison grievance procedures, no constitutional violation occurred. Count 9 shall thus be dismissed with prejudice.

**Pending Motions for TRO or Preliminary Injunction (Docs. 2, 3, & 4)**

Plaintiff seeks two orders – one to prevent Defendant Darnold from rendering any medical treatment to him, and another requiring the prison to provide him with mental health counseling from a non-prison-affiliated professional.

A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).

Plaintiff also seeks a preliminary injunction. The United States Supreme Court has emphasized that a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original)). In considering whether to grant injunctive relief, a district court must weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence.

Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction. *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999); *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872-73 (7th Cir. 2009).

Without expressing any opinion on the merits of any of Plaintiff's other claims for relief, the Court is of the opinion that neither a TRO nor a preliminary injunction should be issued in this matter at this time. Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm before Defendants can be heard, as is required for issuance of a TRO.

Plaintiff also falls short of demonstrating that a preliminary injunction is warranted. Although some of his claims survive § 1915A review, his allegations do not suggest that he is likely to meet any of the five criteria listed above, even if a hearing is granted. His pleading does not indicate a reasonable or substantial likelihood that he would succeed on the merits or that he has no adequate remedy at law, or that he will suffer irreparable harm if an injunction does not issue. Nor are the other factors met. Therefore, the Court finds that a hearing on these motions is not warranted at this time.

Additionally, federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976) (noting

that where a plaintiff requests an award of remedial relief that would require a federal court to interfere with the administration of a state prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of [such] relief."). Plaintiff's requested injunctive relief would deeply involve the Court in the day-to-day administration of his institution, an intrusion that is not justified at this point in the litigation.

Accordingly, Plaintiff's motions for injunctive relief (Docs. 2, 3, & 4) are **DENIED** without prejudice.

**Disposition**

**COUNTS 6, 7, 8, and 9** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendants **KIMMEL, RAY,** and **DOWNEN** are **DISMISSED** from this action with prejudice.

The Clerk of Court shall prepare for Defendants **KNOP, OCHS, DARNOLD, WHEELER, GEIER** and **AUSBROOK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendant until such time as Plaintiff has identified him by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the name and service

address for this individual.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** November 14, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Court